CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 MAY 16  AM 10: 08

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| BRENDA LEE SHUGART, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:15-CV-158-BL |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Assigned to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Brenda Lee Shugart seeks judicial review of the decision of the Commissioner of Social Security (Commissioner), who denied her applications for a period of disability (POD), disability insurance benefits (DIB), widow's insurance benefits (WIB), and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act). The United States District Judge reassigned the case to this Court pursuant to 28 U.S.C. § 636(c). Not all the parties have consented to proceed before a United States Magistrate Judge. After carefully considering all the pleadings, briefs, and administrative record, this Court recommends the decision of the Commissioner be affirmed and this case be dismissed.

### I. STATEMENT OF THE CASE

Plaintiff protectively filed her applications on June 7, 2012, which were denied initially September 24, 2012, and again upon reconsideration January 17, 2013. On February 21, 2014, an Administrative Law Judge (ALJ) held a hearing at which Plaintiff—represented by counsel— testified. In a written decision dated March 26, 2014, the ALJ determined that Plaintiff was not disabled under the Act. Specifically, the ALJ concluded: Plaintiff had not engaged in substantial gainful activity since February 20, 2011, her alleged onset date; Plaintiff had the following severe

impairments: degenerative joint disease of the cervical and lumbar spine and degenerative joint disease of the knees; no impairment or combination of impairments from which Plaintiff suffered met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 21–26. The ALJ also determined that Plaintiff had the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), and accordingly was capable of performing her past relevant work as a general clerk, customer service representative, personnel recruiter, and bookkeeper. *Id.* at 26–31. Therefore, the ALJ determined that Plaintiff was not disabled under the Act, and denied her applications. The Appeals Council denied review on June 23, 2015. *Id.* at 1–7. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## II. FACTUAL BACKGROUND

Plaintiff was born in 1962. She was 51 years old at the time of her administrative hearing and 52 by the time of the ALJ's decision. She graduated high school and after a few years went to truck driving school. Tr. 42. Pertinent to this appeal, Plaintiff has past relevant work as a general clerk, personnel recruiter, bookkeeper, and most recently, a customer service representative. *Id.* at 42–43. She alleges around February of 2011, she lost the ability to work. She alleges she suffers from a number of different physical ailments, including neck, back, and knee pain. It appears, though, that migraine headaches were the main reason she had to stop working; she alleges the headaches caused her to miss several days of work per week. Plaintiff believes her impairments render her disabled and entitle her to benefits under the Act.

## III. STANDARD OF REVIEW

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b) (2013).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial

evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## IV. DISCUSSION

Plaintiff's contentions on appeal appear to divide into two categories. First, Plaintiff contests the ALJ's severity determinations at step two. Second, Plaintiff generally attacks the ALJ's RFC finding, alleging she is more limited than the ALJ found her to be.

### A. Step Two Severity

At step two, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1991). The Court of Appeals for the Fifth Circuit in *Stone v. Heckler*, "set out the correct legal standard to use for determining 'nonseverity,' and held that it will be assumed that the wrong standard was applied unless the correct standard is set forth by reference to [*Stone*] or another [judicial opinion] of the same effect, or by an express statement that the construction [the Fifth Circuit] gives is used." *Lynch v. Shalala*, 19 F.3d 14 (5th Cir. 1994) (internal quotation marks omitted) (*per curiam*); *see Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "An impairment can be considered as not

severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (5th Cir. 1985) (internal quotation marks omitted). The Fifth Circuit has made clear, however, there is no requirement for the "use of 'magic words' for compliance with *Stone*." *Lynch*, 19 F.3d 14 (citing *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986)). A court will remand "only where there is *no indication* the ALJ applied the correct legal standard." *Id.* (internal quotation marks omitted) (emphasis added).

> The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs. Examples of these are walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. Thus, these basic work factors are inherent in making a determination that an individual does not have a severe medical impairment.

SSR 85-28, 1985 WL 56856 (1985). As noted, the ALJ found that Plaintiff suffered from some severe impairments. The ALJ also considered many other impairments from which Plaintiff alleged she suffered, including: "migraine headaches, maxillary sinus disease, enlarged tonsils, bronchitis, gastroesophageal reflux disease (GERD), abdominal pain, Helicobacter pylori (HP), constipation, hypertension, urinary tract infection (UTI), bilateral thumb CMC joint degenerative joint disease, vitamin D deficiency, insomnia, anxiety, and depression." Tr. 21. The ALJ discussed each of these alleged impairments and decided that while the evidence supported that some of them existed, no evidence suggested that any were "severe" under the regulations.

It is clear that Plaintiff does not maintain all of these impairments should be adjudged severe. For example, it is clear that Plaintiff does not contest the non-severity finding of her bronchitis and enlarged tonsils. (Doc. 16, p. 3) ("I do agree that the bronchitis is non-severe. I also

agree the enlarged tonsils are non-severe . . . ."). Plaintiff's position on other impairments is less clear. For example, as to her GERD, HP, and constipation, Plaintiff states the following: "I disagree with these issues being non-severe, but they are also not severe." (Doc. 16, p. 3). It appears Plaintiff is advocating for a third category of impairment, something in between severe and non-severe. *See id.* ("So the GERD is a severe issue, the [HP] and constipation medium to non-severe depending on if it's flared up or under control."). To the extent there appears any dispute as to Plaintiff's position on a particular impairment, the Court will examine that impairment.

Beginning with migraine headaches, the ALJ looked at examination results taken by physicians during a period spanning from late 2011 to the end of 2012. Tr. 21–22. In December 2011, Plaintiff presented with complaints of migraines. The ALJ noted Plaintiff had told the doctors she had experienced relief by taking the prescription medications Zomig and Maxalt in the past. The ALJ also noted the physical exam results, namely that Plaintiff's "head was normocephalic, and her pupils were equal, round, and reactive to light and accommodation. [Plaintiff] was diagnosed with migraine headaches [and] prescribed Zomig and Maxalt." Tr. 21. The ALJ noted an April 2012 examination which revealed results mirroring the prior exam results, and a June 2012 visit where Plaintiff reported her pain management physician told Plaintiff her headaches were not typical migraines but were cervicogenic migraines due to degenerative disc disease. The ALJ noted a September 2012 visit where Plaintiff stated if she started with her medication immediately upon the onset of headache symptoms, she could stop a severe headache attack. At that same appointment, the physician found Plaintiff was alert and oriented to person, place, and time, and her cranial nerves II through XII were grossly intact. In November 2012, Plaintiff underwent an MRI of her brain, which, as the ALJ discussed, revealed normal results. The ALJ considered the entire record and found that in addition to the above-mentioned ordinary

physician findings, the overall frequency with which Plaintiff sought treatment for her migraines was not consistent with someone who suffers from a severe impairment. That is, she sought treatment quite infrequently for her migraines. Her migraines did not impact her ability to perform daily activities. Therefore, considering the record as a whole, the ALJ found any migraines Plaintiff did suffer from caused such minimal effect on her that they were not expected to interfere with her ability to work. Tr. 21–22.

In her pleadings before the Court, Plaintiff largely presents anecdotal arguments combined with "additional" medical records dating back far before the relevant period all the way through the initiation of litigation (many of which were filed in the administrative record), email correspondence between Plaintiff and her attorneys and others, and internet printouts from medical educational websites. Essentially, Plaintiff sets out to qualify the objective results physicians obtained when performing migraine tests, and the infrequency with which she sought migraine treatment. She states prior to visits, she would load up on migraine medications so that when she was at the visit, she would not be experiencing migraine symptoms. As to infrequency of visits, Plaintiff states she did not have a car to drive to the doctor and did not want to inconvenience others for a ride. Crucially, however, Plaintiff fails to dispute that substantial evidence exists in the record from which the ALJ could have made his decisions. The question this Court must ask is, does substantial evidence support the ALJ's conclusions as to Plaintiff's migraines? After surveying the whole record, the Court must answer in the affirmative.

Next, the Court turns to Plaintiff's maxillary sinus disease. The ALJ noted a November 2012 MRI which showed Plaintiff had mild bilateral maxillary sinus disease. Tr. 22. However, the record is shallow on additional physician findings or treatments for maxillary sinus disease, and Plaintiff points to no objective findings or physician opinion indicating that her maxillary sinus

disease interferes with her ability to perform daily activities. In briefing, Plaintiff states "there is a correlation between sinus problems and migraines," and that since she had surgery in 1978 for a deviated septum, her maxillary sinus disease "should not be treated lightly." (Doc. 16, p. 2).

However, as the government points out, a claimant's subjective complaints alone cannot establish disability, and the determination an impairment *exists* is distinct from the determination an impairment is *severe*. *See* 42 U.S.C. § 423(d)(5)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). A claimant must go further and show that because of her impairment she is unable to work. *Anthony*, 954 F.2d at 292. One again, Plaintiff does not contest that substantial evidence in the record supports the ALJ's decision.

Next, the Court considers Plaintiff's abdominal impairments, including GERD, HP, constipation, and abdominal pain. As noted, it is not clear whether Plaintiff is arguing that her abdominal impairments are severe. In briefing, she states:

> [In my prior pleadings I] discuss my GERD, [HP] & constipation. I disagree with these issues being non-severe, but they are also not severe. The GERD is usually the one that causes the most problems. The test done in Colorado at Kaiser showed that I had a large amount of reflux up to my clavicles!! . . . So my GERD is not a minor issue, it is a very serious one!

(Doc. 16, p. 3). Still, the Court will interpret *pro se* Plaintiff's arguments as if she is alleging all these abdominal ailments are severe. The ALJ considered all conditions together, noting that while Plaintiff had been diagnosed with each, objective medical findings of each were not particularly adverse. Tr. 22–23. The ALJ noted:

> In May 2012, the claimant reported experiencing difficulty eating and acid reflux. Upon examination, her stomach was tender in the epigastric area. Additionally, the claimant's [HP] testing came back positive. She was prescribed Prevpac which included Amoxicillin, Prilosec, and Flagyl. The claimant had an allergic reaction to the Flagyl; however, by June 2012 she denied having any abdominal pain.

Tr. 22 (citations omitted). The ALJ also discussed how in September 2012, Plaintiff's

physician found her abdomen soft and non-tender with good bowel sounds. Nonetheless, Plaintiff's physician pronounced Plaintiff to have GERD. One month later, Plaintiff complained of constipation, though her medical provider found that was most likely due to Plaintiff's narcotic pain medication. Again in early 2013, a physician found Plaintiff's abdomen was non-tender with normal bowel sounds. Considering all this in context of the whole record, the ALJ found these few instances of abdominal impairments, without more, did not impact Plaintiff's ability to perform daily activities. Therefore, her abdominal impairments were not severe under the regulations.

Plaintiff again provides no more than anecdotal support to her argument that her abdominal impairments are severe. She states the medical provider who concluded her constipation was caused by narcotic pain medication "was not a pleasant woman to work with," (Doc. 23, p. 5) and "didn't listen to the fact that I had constipation decades before I finally gave in [and] took something to help me with my pain." (Doc. 13, p. 3). Crucially, Plaintiff neither points to objective evidence nor expert opinion in the record indicating her abdominal impairments were severe. *Stone*, 752 F.2d at 1101–02. Nor, in fact, does she contest that substantial evidence in the record supports the ALJ's decision that these impairments were not severe. Once more, the Court notes that it is not enough for a claimant to demonstrate the existence of an impairment; she must show that impairment renders her unable to work. *Anthony*, 954 F.2d at 292.

Next, the Court considers Plaintiff's history with UTIs. Plaintiff provides a threadbare argument of this impairment. She states she had cloudy urine for "over 5 years" and strep in her urine on two tests, which is a big concern for her but "[m]aybe not to the folks at Roby Clinic, but as previously mentioned, there was a lack of professionalism there." (Doc. 16, p. 3). Indeed, Plaintiff points to several portions of her additional records which she claims show cloudy urine

tests. (Doc. 23, p. 5). Accepting, *arguendo*, these tests as true, Plaintiff does not show they impacted her ability to work. The ALJ acknowledged Plaintiff had been diagnosed with UTIs "during the time period at issue. However, examinations have not revealed any significant symptoms or limitations resulting from the impairment." Tr. 23. (citation omitted). Once more, finding no persuasive evidence of the limiting impacts of Plaintiff's UTIs, the Court cannot conclude they are serious. *Stone*, 752 F.2d at 1101–02. More to the point, finding no persuasive attack on the presence of substantial evidence to support the ALJ's conclusions, the Court must disagree with Plaintiff's argument.

Next, the Court considers Plaintiff's osteomalacia (vitamin D deficiency). The ALJ noted Plaintiff was diagnosed with a vitamin D deficiency and went on vitamin D therapy in March 2013. Plaintiff alleges her vitamin D levels were far below "[o]ptimum levels" and that while "the recommended daily amounts vary from 1,000 units to 8,000 units," she was on "50,000 units and still kept having [l]ow [v]itamin D levels." (Doc. 16, p. 4). Still—as before—Plaintiff fails to show how her allegations, even taken as true, produced an impairment that interfered with her ability to perform substantial gainful activity. She does not contest the lack of any objective evidence to show her vitamin D deficiency was severe, and accordingly, her allegations fail to convince the Court. There is substantial evidence in the records that supports the ALJ's decision that Plaintiff's vitamin D deficiency had not more than such a minimal effect that it would not be expected to interfere with Plaintiff's ability to work. *Stone*, 752 F.2d at 1101–02.

Next, the Court considers Plaintiff's insomnia. The ALJ noted that Plaintiff was diagnosed with insomnia in October 2012, but stated "the record fails to show any significant symptoms or limitations resulting from the claimant's insomnia." Tr. 24. In response, Plaintiff again provides threadbare, anecdotal arguments. She flatly states that at one point she had four sleepless nights

during a five day workweek, claiming she tried everything she could think of but still could not sleep, and the experience is "Hades on earth." (Doc. 16, p. 4). As with her previously-discussed impairments, Plaintiff finds no support in the record showing her insomnia causes more than a minimal effect on her. She points to no medical evidence, be it laboratory findings or expert opinion, showing that her insomnia rendered her unable to work. Absent this showing, Plaintiff has failed to meet her burden. Considering the whole record, substantial evidence supports the ALJ's finding that Plaintiff's insomnia is not severe under the law. *Stone*, 752 F.2d at 1101–02.

Next, the Court considers Plaintiff's anxiety and depression. The ALJ discussed these mental impairments at length. He took into account mental status examinations conducted from 2011 all the way through 2013. The ALJ considered Plaintiff's anxiety and depression singly and in combination, and still it was found that the objective results of examinations and tests showed Plaintiff's anxiety and depression did not rise to the level of severe. In response, Plaintiff again presents anecdotal arguments without reference to objective evidence to counter the ALJ's findings. Plaintiff neither points to evidence in the record that shows her depression or anxiety render her unable to work, nor does she convince that substantial evidence in the record does not support the ALJ's conclusions. *Stone*, 752 F.2d at 1101–02. Accordingly, like with the other impairments the ALJ found to be non-severe, the Court finds that substantial evidence in the record supports the ALJ's conclusions as to the severity of Plaintiff's impairments.

Finally, the Court notes that the ALJ properly considered Plaintiff's impairments alone and combination, examining the four broad functional areas known as "Paragraph B" criteria. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1. The regulations set out functional areas for evaluating mental disorders, including: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* The ALJ surveyed the record through the lens of

each functional area and found each time that Plaintiff did not have any limitation in that area. The ALJ found concrete examples from Plaintiff's testimony and other evidence in the record which demonstrated this lack of limitation. In the end, it was evident that Plaintiff's mental impairments, and indeed all her alleged impairments, did not have more than a minimal effect on Plaintiff such that it could be reasonably expected to interfere with her ability to work. *Stone*, 752 F.2d at 1101–02. Accordingly, the ALJ properly found these above-discussed impairments to be non-severe under the regulations.[1] The Court finds that substantial evidence supports the ALJ's severity findings at step two, so they must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

## B. RFC finding

Plaintiff takes issue with the ALJ's RFC finding, broadly asserting that she is more limited than the ALJ found her to be. "RFC is what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184 (July 2, 1996); *see* 20 C.F.R. § 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations. We will assess your [RFC] based on all the relevant evidence in your case record."); 20 C.F.R. § 416.945(a)(1) (same). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (internal quotation marks omitted). This evidence includes objective laboratory and examination results, expert physician opinion, as well as a claimant's own subjective opinions. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers*, 238 F.3d at 620–21. When there are inconsistencies in the evidence, it is the province of the ALJ to resolve the inconsistencies. 20 C.F.R. § 404.1529; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Additionally, "the ALJ has sole responsibility for determining a

---

[1] Plaintiff does not contest the severity findings of the following impairments: enlarged tonsils and bronchitis (Doc. 16, p. 3, para 2) ("I do agree that the bronchitis is non-severe. I also agree the enlarged tonsils are non-severe"); hypertension (Doc. 16, p. 3, para. 4) ("[The ALJ] is correct on the blood pressure"); and degenerative joint disease of the thumbs (Doc. 16, p. 3, para 6) ("This does not need to be listed as severe.").

claimant's disability status," so an opinion by a physician—even a treating physician—that a claimant is disabled or unable to work is not dispositive. *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

Under law, the ALJ conducts a two-step analysis of a claimant's symptoms. *See Salgado v. Astrue*, 271 F.App'x 456, 458 (5th Cir. 2008) (unpublished) (*per curiam*); SSR 96-7p, 1996 SSR WL 374186. During the first, objective step, the ALJ must determine whether there is an underlying, medically-determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. *Salgado* 271 F.App'x at 458. When an impairment described in step one is established, then the ALJ proceeds through the second, subjective step to assess "the intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Id.* at 459. As part of the second step, the ALJ must make a finding regarding the credibility of the claimant's testimony regarding their symptoms. *Id.*

The Fifth Circuit explicitly rejected the requirement that an "ALJ must articulate specifically the evidence that supported his decision and discuss the evidence that was rejected." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Rather, the ALJ is simply bound to generally state his reasons for rejecting a claimant's complaints. *Id.* at 164. Both SSR 96-7p and 20 C.F.R § 416.929(c)(3) set out a seven-factor analysis for an ALJ to apply in order to assess the credibility of a claimant's subjective allegations of pain or fatigue. These factors include:

> (1) your daily activities; (2) the location, duration, frequency, and intensity of your pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (6) any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20

>minutes every hour, sleeping on a board, etc.); and (7) other factors concerning your functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. § 416.929(c)(3). Although the ALJ must articulate the basis for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005) (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)). Finally, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983) (*per curiam*). "Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

In conducting the first step of the analysis, the ALJ cataloged at length Plaintiff's medical history, beginning long before Plaintiff's alleged onset date. *See* Tr. 26–29. Ultimately, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 29. The ALJ worked through the seven factors beginning with Plaintiff's daily activities (1), noting Plaintiff was "able to prepare meals, drive, shop in stores and online, watch television, and [spend] time with others." Tr. 24. Next, the ALJ considered the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms (2), discussing in detail each examination on the record with Drs. Oliva, McDonough, Lindsey, Rowley, and Herman. Tr. 26–29. The ALJ considered any precipitating and

14

aggravating factors relating to Plaintiff's impairments (3), specifically noting, for example, Plaintiff's long history with knee, back, and neck issues dating back before the alleged onset date. *Id.* The ALJ discussed the type, dosage, effectiveness, and side effects of the medication Plaintiff took or had taken to alleviate her pain or other symptoms (4), noting Plaintiff's preference for conservative medicinal pain management and their success. Tr. 21–29. The ALJ identified treatments (5) and measures other than medication (6) that Plaintiff had used to obtain relief, including chiropractic treatment. Tr. 29. Finally, the ALJ clearly expressed knowledge of other factors concerning Bennett's functional limitations and restrictions due to pain or other symptoms (7). This is evident in the ALJ's RFC assessment and findings. Tr. 21–31. Consequently, the Court finds that the ALJ conducted a proper analysis weighing all the evidence in Plaintiff's case. The ALJ applied the proper legal standard to this determination and, as such, this issue does not require remand.

### C. Potential Issues Raised

Finally, the Court addresses two issues Plaintiff appears to raise, but require only brief attention. First, Plaintiff appears to take issue with the conclusion of the Vocational Expert (VE) at the administrative hearing. Plaintiff claims the VE stated Plaintiff, in her condition at the time of the hearing, was not employable. (Doc. 16, p. 1). However, as the government points out, the limitations which the VE found to render a person unable to maintain employment were not adopted by the ALJ. Meaning, the ALJ concluded Plaintiff had a certain level of functional capability which did not include the traits the VE said would render someone unable to maintain employment. It appears the Plaintiff concedes this point, however, because once clarified by the government, Plaintiff does not raise it in her reply brief.

Second is the issue of the additional records Plaintiff submitted to the Court but not to the

ALJ or to the Appeals Council. A "court may remand to the [Commissioner] and order consideration of additional evidence 'upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994) (quoting 42 U.S.C. § 405(g) (1991 & Supp. 1994)). "For new evidence to be material, there must exist the 'reasonable possibility that it would have changed the outcome of the [Commissioner's] determination.'" *Id.* (quoting *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir.1981)). This case does not require remand because Plaintiff's new evidence fails on both prongs. Neither is her evidence material, in that it does not produce a reasonable possibility that it would have changed the Commissioner's decision, nor does Plaintiff present good cause why it was not incorporated into the record at a prior proceeding. To the extent Plaintiff raises this issue, it is unconvincing to the Court.

## V. CONCLUSION

In sum, because substantial evidence supports the ALJ's determinations, his decision is conclusive and must be upheld. *Paul*, 29 F.3d at 210. For the foregoing reasons, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated May 16, 2016.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**